## UNITED STATES DISTRICT COURT
## FOR THE WESTERN DISTRICT OF TEXAS
## WACO DIVISION

| | |
|---|---|
| TIFFANY BISSELL, | CIVIL ACTION |
| Plaintiff, | |
| v. | COMPLAINT 6:19-cv-00394 |
| BANK OF AMERICA, N.A., and TRANSUNION LLC, | JURY TRIAL DEMANDED |
| Defendants. | |

## <u>COMPLAINT</u>

NOW comes TIFFANY BISSELL ("Plaintiff"), by and through her attorneys, Sulaiman Law Group, Ltd. ("Sulaiman"), complaining as to the conduct of BANK OF AMERICA, N.A. ("BofA"), and TRANSUNION, LLC ("TransUnion") (collectively, "Defendants"), as follows:

### NATURE OF THE ACTION

1. Plaintiff brings this action seeking redress for Defendants' violations of the Fair Credit Reporting Act ("FCRA") pursuant to 15 U.S.C. §1681 *et seq*. and BofA's violations of the Texas Debt Collection Act ("TDCA") pursuant to Tex. Fin. Code. Ann. §392 *et seq.*

### JURISDICTION AND VENUE

2. This action arises under and is brought pursuant to the FCRA.  Subject matter jurisdiction is conferred upon this Court by 15 U.S.C. §1681p, 28 U.S.C. §§1331 and 1337(a), as the action arises under the laws of the United States. Supplemental jurisdiction exists for the state law claim pursuant to 28 U.S.C. §1367.

3. Venue is proper in this Court pursuant to 28 U.S.C. §1391 as Defendants conduct business in the Western District of Texas, and a substantial portion of the events or omissions giving rise to the claims occurred within the Western District of Texas.

PARTIES

4. Plaintiff is a consumer over 18-years-of-age residing in Coryell County, Texas, which is located within the Western District of Texas.

5. BofA is engaged in the business of offering credit services and collecting or attempting to collect, directly or indirectly, debts owed or due using the mail and telephone from consumers across the country, including consumers located in the state of Texas.  Defendant a corporation headquartered in North Carolina, with its principal place of business located at 100 North Tyron Street, Charlotte, North Carolina 28255.  BofA is a furnisher of credit information to the major credit reporting agencies ("CRA"), including co-Defendant TransUnion.

6. TransUnion is a Delaware limited liability corporation with its principal place of business located in Chicago, Illinois. TransUnion is regularly engaged in the business of assembling, evaluating, and disbursing information concerning consumers for the purpose of furnishing consumer reports and credit files to third parties bearing on a consumer's credit worthiness, credit standing, and credit capacity on a nationwide basis, including in the State of California.

7. Joinder of Plaintiff's claims against Defendants is proper under Fed. R. Civ. P. 20(a)(2) as the claims arise out of the same transaction, occurrence, or series of transactions or occurrences and common questions of law or fact will arise.

FACTS SUPPORTING CAUSE OF ACTION

8. Several years ago, Plaintiff opened a credit card account through BofA.

9. The governing credit card agreement entered into between Plaintiff and BofA sets forth the following language:

> "If you permit any person to use your card, access checks, account number, or other credit device with the authorization to obtain credit on your account, you will be liable for all transactions made by that person including transactions for which you may not have intended to be liable, even if the amount of those transactions causes a credit line to be exceeded."

10. In September 2018, Plaintiff's daughter, who was 10 years old at the time, obtained Plaintiff's credit card information, and without Plaintiff's knowledge or authorization, made a number of online transactions, totaling $8,200.00 ("subject debt").

11. At the time, the amount of the unauthorized charges exceeded the credit limit imposed by BofA, but yet, BofA neglected to inform Plaintiff of a possible fraud alert and allowed the transactions to be processed.

12. On September 29, 2018, Plaintiff discovered the unauthorized charges on her account and immediately contacted the Coryell County, Florida Sheriff's Office.

13. Through the Coryell County Sheriff's Office, Plaintiff filed a police report detailing the fraudulent charges.

14. On the same day, Plaintiff also contacted BofA's fraud department, informing it of the fraudulent transactions, and while BofA temporarily credited Plaintiff's account, on October 4, 2018, Plaintiff was informed that BofA's fraud investigation was completed and that the fraudulent charges would be re-added to Plaintiff's account.

15. Perplexed by BofA's response, on October 5, 2018, Plaintiff submitted a written dispute to the Consumer Financial Protection Bureau ("CFPB"), wherein Plaintiff explained, in great detail, the aforementioned series of events.

16. On October 18, 2018, BofA responded to Plaintiff's CFPB dispute by stating that Plaintiff's "fraud claim was re-reviewed and the denial was found valid."

17. Within its response, BofA set forth multiple false assertions, including:

"We have confirmed no police report has been submitted alleging your daughter as the fraud operator…"

"Minors under the age of 18 are not able to enter into contractual payment obligations with Bank of America.  As such the minor you explained lives in your household, made the charges *and was under the impression of expressed permission to use the account either by previously made valid charges with the credit card for in app purchases, or the minor took said card for use*." (emphasis added)

18. BofA's remarks are patently false, as Plaintiff explicitly made BofA aware of the police report that was filed, as evidenced by subsequent dispute letters sent to BofA, including one sent on October 14, 2018.

19. In addition, even though the fraudulent transactions were not authorized by Plaintiff, BofA makes the false assumption that Plaintiff's daughter had permission to make the transactions, when Plaintiff repeatedly informed it otherwise.

20. As reflected in the credit card agreement entered into between Plaintiff and BofA, Plaintiff would only be liable for the transactions if the transactions were authorized.   This was not the case here.

21. Throughout this time period, Plaintiff also initiated disputes with the CRAs, as the subject debt was being reported on Plaintiff's credit profile.

22. Initially, Experian Information Solutions, Inc. ("Experian") and Equifax Information Services, LLC ("Equifax") removed the erroneous BofA trade-line, as did TransUnion.

23. However, in January 2019, despite the fact that Experian and Equifax upheld its deletion of the BofA trade-line, TransUnion decided to re-insert the erroneous trade-line onto Plaintiff's TransUnion's report.

24. Accordingly, on or about April 29, 2019, Plaintiff initiated a written credit dispute with all TransUnion. Specifically, Plaintiff requested that TransUnion remove the erroneous credit reporting of the BofA subject debt.

25. Plaintiff's dispute letter to TransUnion disclosed the following:

---

**Dear Sir or Madam:**

I have reviewed my credit reports and found the below listed accounts are reporting inaccurate information:

1) Bank of America - this account is reporting a balance of 10,314.  8200.00 of this balance should be removed as I was a victim of fraud.  Acct#546633110965-███  I dispute the balance and monthly payment showing as owed based on the attached.

I want you to investigate the above accounts and contact them separately to update their information. The balance, monthly payment, payment status, past due amount, and remarks are all wrong and need to be updated. You should also correct and update the remarks, payment status, and correct the payment history. Please note that all of the above listed accounts were closed and the monthly payment amount should be zero and I demand that my credit reports reflect that. Please send my dispute letter and the enclosures to each of the creditors listed above.

---

26. Plaintiff sent this dispute letter, along with her driver's license, social security card, and police report, to TransUnion via certified U.S. mail.

27. Upon information and belief, BofA received notice of Plaintiff's dispute and accompanying information within five days of Plaintiff initiating the dispute with TransUnion. *See* 15 U.S. Code §1681i(a)(2).

28. On or about May 13, 2019, TransUnion responded by failing to reasonably investigate Plaintiff's credit dispute. Specifically, while TransUnion stated that, "A change was made to the

[account] based on your dispute and other information has also changed," TransUnion's reporting

of the BofA account reflected a balance that was even higher than before, as seen below:

29. As outlined in Plaintiff's dispute letter to TransUnion, $8,200 should have been deducted

from the balance, as the transactions comprising that amount were not authorized by Plaintiff.

30. Yet, TransUnion has continued to disseminate the inaccurate information in Plaintiff's

credit file to various persons and credit grantors.

31. TransUnion's reinvestigation reports revealed that BofA intentionally misrepresented to

TransUnion that Plaintiff had a balance far greater than her actual responsibility.   BofA's

misrepresentation and false certification resulted in TransUnion releasing Plaintiff's highly

confidential and sensitive personal information.

32. Defendants both negligently and willfully violated the FCRA by continuing to report an

erroneous balance on Plaintiff's consumer credit report, despite the multitude of disputes sent by

Plaintiff.

33. Of the three major CRAs, TransUnion is the only agency that failed to remove the

erroneous reporting of the subject debt.

34. Notwithstanding Plaintiff's disputes, BofA has also failed to conduct timely and reasonable investigations of Plaintiff's disputes after being put on notice of erroneous credit information in Plaintiff's credit file from TransUnion.

35. The reporting of the BofA trade line is patently inaccurate and materially misleading, as Plaintiff was the victim of fraud and never authorized or had knowledge of the fraudulent transactions comprising the subject debt.

36. Any reasonable investigation engaged in by TransUnion and/or BofA would and should have revealed the inaccuracy of the information on Plaintiff's credit report.

### IMPACT OF INACCURATE INFORMATION IN PLAINTIFF'S CREDIT FILE

37. The erroneous reporting of the subject account paints a false and damaging image of Plaintiff. Specifically, the inaccurate reporting of the subject account has had a significant adverse impact on Plaintiff's credit rating and creditworthiness because it erroneously misleads creditors into believing that Plaintiff has significant outstanding balances that will affect Plaintiff's ability to meet potential future obligations.

38. The entire experience has imposed upon Plaintiff significant distrust, frustration, distress, and has rendered Plaintiff helpless as to her ability to regain a firm foothold on her creditworthiness, credit standing, and credit capacity.

39. Despite Plaintiff's exhaustive efforts to date, Defendants have nonetheless willfully failed to perform reasonable investigations and reinvestigations of the disputed inaccurate information in Plaintiff's TransUnion credit file as required by the FCRA.

40. Defendants have failed to report the results of its reinvestigations to all CRAs, have failed to note the disputed status of the inaccurate information and have continued to report the derogatory inaccurate information about Plaintiff

41. As a result of the conduct, actions, and inaction of Defendants, Plaintiff has suffered various types of damages as set forth herein, including specifically, the loss of credit opportunity, the loss of ability to purchase and benefit from a credit line, certified mail expenses, and other frustration and aggravation associated with writing dispute letters, time and money expended meeting with her attorneys, tracking the status of her disputes, monitoring her credit file, and mental and emotional pain and suffering.

42. Due to the conduct of Defendants, Plaintiff was forced to retain counsel to correct the inaccuracies in her TransUnion credit files.

### COUNT I - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
(AGAINST TRANSUNION)

43. Plaintiff restates and realleges paragraphs 1 through 42 as though fully set forth herein.

44. TransUnion is a "consumer reporting agency" as defined by 15 U.S.C. §1681a(f).

45. TransUnion is a "consumer reporting agency that compiles and maintains files on consumers on a nationwide basis" as defined by 15 U.S.C. §1681a(p).

46. At all times relevant, the above-referenced credit reports were "consumer reports" as that term is defined by §1681a(d).

47. At all times relevant, Plaintiff is a "consumer" as the term is defined by 15 U.S.C. §1681a(c).

48. The FCRA mandates that "[w]henever a consumer reporting agency prepares a consumer report it shall follow reasonable procedures to assure maximum possible accuracy of the information concerning the individual about whom the report relates." 15 U.S.C. § 1681e(b).

49. The FCRA requires that the credit reporting industry to implement procedures and systems to promote accurate credit reporting.

50. If a consumer notifies a credit reporting agency of a dispute concerning the accuracy of any item of credit information, the FCRA requires the credit reporting agency to reinvestigate free of charge and record the current status of the disputed information, or delete the item within 30 days of receiving the dispute. 15 U.S.C. §1681i(a)(1)(A).

51. Plaintiff provided TransUnion with all relevant information in her request for investigation to reflect that the balance reflected on her BofA trade-line was incorrect, as she was the victim of fraud.

52. TransUnion prepared Plaintiff's credit reports containing inaccurate and materially misleading information by reporting the BofA subject debt with an excessive balance, when in fact, Plaintiff was not responsible for the fraudulent transactions comprising this balance.

53. TransUnion violated 15 U.S.C. §1681e(b) by failing to establish or to follow reasonable procedures to assure maximum possible accuracy in preparation of the consumer reports it furnished and refurnished regarding Plaintiff. Upon information and belief, TransUnion prepared patently false and materially misleading consumer reports concerning Plaintiff.

54. TransUnion violated 15 U.S.C. §1681i(a)(1) by failing to conduct a reasonable investigation to determine whether the disputed information was accurate and to subsequently delete or correct the information in Plaintiff's credit files.

55. TransUnion violated 15 U.S.C. §1681i(a)(2) by failing to provide notification of Plaintiff's dispute to BofA. Upon information and belief, TransUnion also failed to include all relevant information as part of the notice to BofA regarding Plaintiff's dispute that TransUnion received from Plaintiff.

56. TransUnion violated 15 U.S.C. §1681i(a)(4) by failing to review and consider all relevant information that it received from Plaintiff with regard to the subject account.

57. TransUnion violated 15 U.S.C. §1681i(a)(5) by failing to delete or modify the inaccurate information that was the subject of Plaintiff's disputes.

58. TransUnion violated 15 U.S.C. §1681i(a)(5)(B) by reporting disputed information without certification from BofA that the information was complete and accurate, and without sending notice of the re-reporting to Plaintiff.

59. TransUnion violated 15 U.S.C. §1681c-2(a) by failing to block the information pertaining to the subject account within 4 days after Plaintiff notified TransUnion of the fraud.

60. TransUnion violated 15 U.S.C. §1681c-2(b) by failing to promptly notify BofA that the disputed information may be a result of fraud and that a block of the disputed information is mandated by 15 U.S.C. §1681c-2(a).

61. TransUnion violated 15 U.S.C. §1681c-2(c) by failing to promptly notify Plaintiff within the timeframe prescribed by 15 U.S.C. §1681i(a)(5)(B) that TransUnion has declined to block the disputed information.

62. TransUnion knew that the inaccurate reporting of the subject debt in Plaintiff's credit files would have a significant adverse impact on Plaintiff's credit worthiness and her ability to receive financing and/or credit opportunities, especially given the high balance of the BofA account.

63. The FCRA requires that the credit reporting industry implement procedures and systems to promote accurate credit reporting.

64. Despite actual knowledge that Plaintiff's credit files contained erroneous information, TransUnion readily sold Plaintiff's inaccurate and misleading reports to one or more third parties, thereby misrepresenting material facts about Plaintiff and, ultimately, Plaintiff's creditworthiness.

65. By deviating from the standards established by the credit reporting industry and the FCRA, TransUnion acted with a reckless disregard for its duties to report accurate and complete consumer credit information.

66. It is TransUnion's regular business practice to continually report disputed information without taking the required investigatory steps to meaningfully verify such information as accurate.

67. TransUnion's perpetual non-compliance with the requirements of the FCRA is indicative of the reckless, willful, and wanton nature of its conduct in maintaining Plaintiff's credit files and reporting her credit information accurately.

68. TransUnion acted reprehensively and carelessly by reporting and re-reporting Plaintiff as continually in collections after Plaintiff put TransUnion on notice that he was not obligated to pay the subject account.

69. TransUnion has exhibited a pattern of refusing to correct errors in consumer credit files despite being on notice of patently false and materially misleading information contained in such files, ultimately valuing its own bottom line above its grave responsibility to report accurate data on consumers.

70. As stated above in paragraphs 37 through 42, Plaintiff was severely harmed by TransUnion's conduct.

WHEREFORE, Plaintiff, TIFFANY BISSELL, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing that TransUnion immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c.  Award Plaintiff actual damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

d.  Award Plaintiff statutory damages of $1,000.00 for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

e.  Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. § 1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

## COUNT II - VIOLATIONS OF THE FAIR CREDIT REPORTING ACT
### (AGAINST BofA)

71. Plaintiff restates and realleges paragraphs 1 through 70 as though fully set forth herein.

72. Plaintiff is a "consumer" as defined by 15 U.S.C. §§1681a(b) and (c).

73. BofA is a "person" as defined by 15 U.S.C. §1681a(b).

74. BofA is a "furnisher of information" as defined by 15 U.S.C. §1681s-2 and a "financial institution" as defined by 15 U.S.C. §1681a(t).

75. At all times relevant, the above mentioned credit reports were "consumer reports" as the term is defined by §1681a(d)(1).

76. BofA violated 15 U.S.C. §1681s-2(b)(1)(A) by failing to conduct an investigation with respect to the disputed information after receiving requests for an investigation from TransUnion and Plaintiff.

77. Notwithstanding BofA's knowledge that Plaintiff did not authorize the fraudulent transactions, BofA consciously failed to conduct a reasonable investigation of the accuracy of the disputed information it furnished to TransUnion.

78. BofA's conduct demonstrates a reckless disregard for Plaintiff's rights under the FCRA.

79. BofA violated 15 U.S.C. §1681s-2(b)(1)(B) by failing to review all relevant information provided by TransUnion and Plaintiff pursuant to §1681i(a)(2).

80. Had BofA reviewed the information provided by TransUnion and Plaintiff, it would have removed the subject debt from the BofA trade-line and transmitted the correct information to TransUnion. Instead, BofA wrongfully and erroneously confirmed its inaccurate reporting without conducting a reasonable investigation.

81. BofA violated 15 U.S.C. §1681s-2(b)(1)(C) by failing to report the results of any reasonable investigation or reinvestigation of Plaintiff's disputes to TransUnion.

82. BofA violated 15 U.S.C. §1681s-2(b)(1)(C)-(D) by failing to report the results of its investigation or reinvestigation to TransUnion being put on notice and discovering inaccurate and misleading reporting with respect to the subject account.

83. BofA violated 15 U.S.C. §1681s-2(b)(1)(E) by failing to promptly modify, delete, or permanently block the inaccurate information on Plaintiff's credit file. Instead, BofA continued to report the inaccurate and misleading information in Plaintiff's credit file after Plaintiff's detailed disputes.

84. BofA failed to conduct a reasonable reinvestigation of their reporting of the collection accounts, record that the information was disputed, or delete the inaccurate reporting from Plaintiff's credit file within 30 days of receiving notice of a dispute from TransUnion under 15 U.S.C. §1681i(a)(1).

85. BofA violated 15 U.S.C. §1681s-2(b)(2) by failing to take the required action with respect to Plaintiff by the deadlines set forth in 15 U.S.C. §1681i(a)(1).

86. BofA violated 15 U.S.C. §1681s-2(a)(6)(B) by furnishing the disputed information to TransUnion after it received notice that Plaintiff is a victim of fraud.

87. Despite the blatantly obvious errors in Plaintiff's credit file, and Plaintiff's efforts to correct the errors, BofA did not correct the errors to report accurately. Instead, BofA wrongfully re-reported, furnished and re-furnished false and erroneous information in Plaintiff's consumer reports.

88. A reasonable investigation by BofA would have confirmed the veracity of Plaintiff's disputes.

89. Had BofA taken any steps to investigate Plaintiff's valid disputes or TransUnion's requests for investigations, it would have permanently corrected the erroneous credit reporting. Plaintiff provided all relevant information regarding her disputes in her requests for investigation.

90. By deviating from the standards established by the debt collection industry and the FCRA, BofA acted with reckless and willful disregard for their duties as furnishers to report accurate and complete consumer credit information to TransUnion.

91. As stated above in paragraphs 37 through 42, Plaintiff was severely harmed by BofA's conduct.

WHEREFORE, Plaintiff, TIFFANY BISSELL, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declare that the practices complained of herein are unlawful and violate the aforementioned statute;

b. An order directing BofA to immediately delete all of the inaccurate information from Plaintiff's credit reports and credit files;

c. Award Plaintiff actual damages, in an amount to be determined at trial, for each of the underlying FCRA violations;

d. Award Plaintiff statutory damages of $1,000.00 for each violation of the FCRA, pursuant to 15 U.S.C. §1681n;

e. Award Plaintiff punitive damages, in an amount to be determined at trial, for the underlying FCRA violations, pursuant to 15 U.S.C. §1681n and 15 U.S.C. §1681o;

f.  Award Plaintiff costs and reasonable attorney's fees as provided under 15 U.S.C. §1681n and 15 U.S.C. §1681o; and

g.  Award any other relief as this Honorable Court deems just and appropriate.

### COUNT III – VIOLATIONS OF THE TEXAS DEBT COLLECTION ACT
(AGAINST BofA)

92.  Plaintiff restates and realleges paragraphs 1 through 91 as though fully set forth herein.

93.  Plaintiff is a "consumer" as defined by Tex. Fin. Code Ann. § 392.001(1).

94.  BofA is a "debt collector" as defined by Tex. Fin. Code Ann. § 392.001(6).

95.  The subject debt is a "consumer debt" as defined by Tex. Fin. Code Ann. § 392.001(2) as it is an obligation, or alleged obligation, arising from a transaction for personal, family, or household purposes.

**a.  Violations of TDCA § 392.303**

96.  The TDCA, pursuant to Tex. Fin. Code Ann. § 392.303(3), states that a debt collector may not collect or attempt "to collect an obligation under a check, draft, debit payment, or credit card payment," if (A) "payment was not made by a person authorized to use the applicable account; (B) the debt collector has received written notice from a person authorized to use the account that the check, draft, or payment was unauthorized; and (C) the person authorized to use the account has filed a report concerning the unauthorized check, draft, or payment with a law enforcement agency, and has provided the debt collector with a copy of the report."

97.  BofA violated the TDCA when it continued to consciously collect upon the subject debt, even after having written notice that the subject debt was comprised of fraudulent transactions, as well as a copy of a police report validating the same.  In spite of this information, BofA continued to transmit false information to TransUnion, and continued to contact Plaintiff in an attempt to collect upon the subject debt.

### b. Violations of TDCA § 392.304

98. The TDCA, pursuant to Tex. Fin. Code Ann. § 392.304(8), states that a debt collector may not "misrepresent the character, extent, or amount of a consumer debt."

99. Moreover, pursuant to Tex. Fin. Code Ann. § 392.304(19), a debt collector is prohibited from "using any . . . false representation or deceptive means to collect a debt or obtain information concerning a consumer."

100. BofA violated the TDCA through the misrepresentations made regarding the subject debt. Plaintiff made countless efforts to inform BofA that she had no obligation on the subject debt. The language reflected in BofA's contractual agreement with Plaintiff clearly proves that the subject debt was not comprised of authorized charges, and accordingly, Plaintiff is not liable for the fraudulent transactions. Yet, BofA responded to Plaintiff's disputes with false statements and continued to misrepresent the balance on Plaintiff's account.

WHEREFORE, Plaintiff, TIFFANY BISSELL, respectfully requests that this Honorable Court enter judgment in her favor as follows:

a. Declaring that the practices complained of herein are unlawful and violate the aforementioned statutes and regulations;

b. Entitling Plaintiff to injunctive relief pursuant to Tex. Fin. Code Ann. § 392.403(a)(1).

c. Awarding Plaintiff actual damages, pursuant to Tex. Fin. Code Ann. § 392.403(a)(2).

d. Awarding Plaintiff punitive damages, in an amount to be determined at trial, for the underlying violations;

e. Awarding Plaintiff costs and reasonable attorney fees, pursuant to Tex. Fin. Code Ann. § 392.403(b);

f. Enjoining BofA from further contacting Plaintiff seeking payment of the subject debt; and

g. Awarding any other relief as this Honorable Court deems just and appropriate.

Dated: June 27, 2019

Respectfully submitted,

s/ Nathan C. Volheim
Nathan C. Volheim, Esq. #6302103
Counsel for Plaintiff
Admitted in the Western District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 568-3056 (phone)
(630) 575-8188 (fax)
nvolheim@sulaimanlaw.com

s/Taxiarchis Hatzidimitriadis
Taxiarchis Hatzidimitriadis, Esq. #6319225
Counsel for Plaintiff
Admitted in the Western District of Texas
Sulaiman Law Group, Ltd.
2500 South Highland Ave., Suite 200
Lombard, Illinois 60148
(630) 581-5858 (phone)
(630) 575-8188 (fax)
thatz@sulaimanlaw.com